1

```
 1                    UNITED STATES DISTRICT COURT
                   FOR THE EASTERN DISTRICT OF TEXAS
 2                        BEAUMONT DIVISION

 3    UNITED STATES OF AMERICA      )   CRIMINAL DOCKET NO.
                                    )   1:07-CR-142 (1,2)
 4                                  )
                                    )
 5    VS                            )   BEAUMONT, TEXAS
                                    )
 6                                  )
                                    )
 7    MICHAEL BACOTE (1) AND JOSEPH )
      EBRON (2),                    )   MARCH 19, 2008
 8    DEFENDANTS                    )   10:00 A.M.

 9    ***********************************************************

10                  TRANSCRIPT OF STATUS CONFERENCE
                          VOLUME I OF I
11              BEFORE THE HONORABLE MARCIA A. CRONE
                    UNITED STATES DISTRICT JUDGE
12
      ***********************************************************
13
      APPEARANCES:
14
      FOR THE GOVERNMENT:          JOE BATTE
15                                 A.U.S.A.
                                   350 MAGNOLIA, SUITE 150
16                                 BEAUMONT, TX 77701

17    FOR THE DEFENDANT BACOTE:    GERALD BOURQUE
                                   ATTORNEY AT LAW
18                                 6630 CYPRESSWOOD DRIVE #200
                                   SPRING, TX 77379
19
                                   DAVID CUNNINGHAM
20                                 ATTORNEY AT LAW
                                   2814 HAMILTON STREET
21                                 HOUSTON, TX 77004

22    FOR THE DEFENDANT EBRON:     JIMMY PHILLIPS, JR.
                                   ATTORNEY AT LAW
23                                 P.O. BOX 29
                                   ANGLETON, TX 77516-1536
24

25
```

TRANSCRIPT OF PROCEEDINGS

2

1  APPEARANCES:  (CONTINUED)

2  FOR THE DEFENDANT EBRON:        KATHERINE SCARDINO
                                   ATTORNEY AT LAW
3                                  3730 KIRBY DRIVE, SUITE 1120
                                   HOUSTON, TX 77098
4

5  COURT REPORTER:                 WENDELL R. PARKS, CP/CM
                                   FEDERAL OFFICIAL REPORTER
6                                  300 WILLOW, ROOM 103
                                   BEAUMONT, TX 77701
7

8
            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY;
9
                TRANSCRIPT PRODUCED BY COMPUTER
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1   MARCH 19, 2008                              10:09 A.M.

2               (OPEN COURT, DEFENDANTS PRESENT)

3               THE COURT:   OKAY.   THIS IS CASE NUMBER 1:07-CR-142,

4   UNITED STATES OF AMERICA VERSUS MICHAEL BACOTE AND JOSEPH

5   EBRON.

6               WE'RE HAVING A PRETRIAL HEARING TODAY.

7               DO YOU WANT TO ANNOUNCE YOUR APPEARANCE, PLEASE?

8               MR. BATTE:   JOE BATTE FOR THE GOVERNMENT, YOUR HONOR.

9               MR. CUNNINGHAM:   DAVID CUNNINGHAM AND GERALD BOURQUE

10  FOR MR. BACOTE, YOUR HONOR.

11              MS. SCARDINO:   KATHERINE SCARDINO AND JIMMY PHILLIPS,

12  JR., FOR JOSEPH EBRON.

13              THE COURT:   ALL RIGHT.   THERE ARE A FEW MOTIONS WE

14  HAVE.

15              I THINK BOTH OF YOU -- BOTH DEFENDANTS FILED MOTIONS

16  FOR CONTINUANCE.

17              THERE'S A MOTION TO SEVER.

18              AND I TAKE IT, MR. BACOTE, YOU'VE WORKED OUT YOUR

19  PROBLEMS WITH YOUR ATTORNEYS.

20              IS THAT CORRECT?

21              DEFENDANT BACOTE:   NO.

22              THE COURT:   EXCUSE ME?

23              DEFENDANT BACOTE:   NO.

24              THE COURT:   WELL, ARE YOU STILL WISHING TO HAVE A NEW

25  COUNSEL?

4

1                DEFENDANT BACOTE:  YEAH.

2                THE COURT:  OH, OKAY.  WHY IS THAT?

3                DEFENDANT BACOTE:  I JUST DON'T FEEL COMFORTABLE WITH

4     THEM.

5                THE COURT:  WELL, THAT'S REALLY NOT A GROUND FOR

6     HAVING NEW COUNSEL.  MR. BOURQUE AND MR. CUNNINGHAM ARE

7     EXTREMELY WELL QUALIFIED AND EXPERIENCED IN THIS AREA.  I THINK

8     THEY WOULD SERVE YOU WELL.

9                DEFENDANT BACOTE:  WELL, I FEEL AS THOUGH THAT THEY

10    ARE SURROGATE PROSECUTORS.

11               THE COURT:  THEY DO NOT SERVE AS PROSECUTORS.

12    THEY'RE HERE TO DEFEND YOU, AND THEY'LL DO A FINE JOB.

13               SO THAT MOTION IS DENIED.

14               OKAY.  THEN I THINK THE MOTION TO SEVER --

15               MS. SCARDINO, IS THAT YOUR MOTION?

16               MS. SCARDINO:  YES, MA'AM.  I DON'T HAVE IT WITH ME,

17    AND I APOLOGIZE, BUT I DID FILE ONE EARLIER, AND I PRESUME THAT

18    IS MY MOTION, YOUR HONOR.

19               THE COURT:  IT DOES LOOK LIKE YOUR MOTION.

20               MS. SCARDINO:  YES.  OKAY.

21               THE COURT:  OKAY.  ARE YOU GOING TO --

22               MS. SCARDINO:  I WOULD REQUEST THE COURT, YOUR HONOR,

23    BECAUSE OF THE SERIOUSNESS OF THIS CASE, BECAUSE BOTH

24    DEFENDANTS ARE LOOKING AT A DEATH SENTENCE IN THIS CASE, AND I

25    WOULD ASK THE COURT SIMPLY TO SEVER BASED UPON MY ARGUMENT IN

1    THAT MOTION AS WELL AS JUST COMMON SENSE.  IT IS TOO DIFFICULT

2    TO TRY TWO PEOPLE WHO ARE BOTH ACCUSED OF CAPITAL MURDER IN

3    FRONT OF ONE JURY AND EXPECT THAT ONE JURY TO UNDERSTAND THE --

4    OR TO ZERO IN ON THE DIFFERENCES BETWEEN EACH OF THESE

5    INDIVIDUAL PEOPLE.  THEY HAVE TO UNDERSTAND THEIR BACKGROUND.

6    THEY HAVE TO LISTEN TO VARIOUS OR DIFFERENT MITIGATION

7    EVIDENCE.  THEY HAVE DIFFERENT EVIDENCE WITH REGARD TO THIS

8    PARTICULAR INCIDENT.  ONE MAY BE MORE CULPABLE THAN THE OTHER.

9    ONE MAY -- CERTAINLY IT MAY BE OBVIOUS THAT IS ONE IS NOT AS

10   CULPABLE AS THE OTHER.  AND TO ASK ONE JURY TO FOCUS ON ALL

11   THOSE NUANCES AND SEPARATE ALL THE EVIDENCE THAT THEY HEAR FOR

12   TWO DIFFERENT PEOPLE WITH TWO VERY SERIOUS CRIMES I BELIEVE IS

13   ASKING MORE THAN IS POSSIBLE.

14           I UNDERSTAND THE LAW.  IN FEDERAL LAW THIS HAPPENS

15   ALL THE TIME.  YOU HAVE VARIOUS DEFENDANTS TRIED TOGETHER.  I

16   JUST -- I'M ASKING THIS COURT TO ORDER THAT MR. BACOTE AND MR.

17   EBRON BE TRIED SEPARATELY BASED UPON THE FACT THAT THEY ARE

18   BOTH LOOKING AT A DEATH SENTENCE, AND IT IS MORE SERIOUS THAN

19   ANY OTHER KIND OF CASE.  A DRUG CASE, MULTIPLE DEFENDANTS, NOT

20   UNUSUAL.  WE UNDERSTAND THAT.  BUT BECAUSE OF THIS PARTICULAR

21   CASE, BECAUSE THE SUPREME COURT HAS SAID THAT DEATH IS

22   DIFFERENT, AND THAT DEATH IS RESERVED FOR A VERY NARROW CLASS

23   OF INDIVIDUALS, AND TO ASK THIS JURY TO MAKE THAT DISTINCTION,

24   HEARING TWO SETS OF EVIDENCE AND TWO SETS OF WITNESSES AND TWO

25   SETS OF EXPERTS AND SEPARATE THEM OUT JUST SIMPLY DOES NOT MAKE

6

1  GOOD COMMON SENSE IN MY MIND.

2           AND I'M ASKING THE COURT TO GRANT MY MOTION TO SEVER.

3           THE COURT:  DO YOU HAVE A RESPONSE, MR. BATTE?

4           MR. BATTE:  YES, YOUR HONOR.

5           I KNOW THE COURT KNOWS THE LAW IN THIS AREA, AND I

6  KNOW THE COURT RECOGNIZES THAT THAT LAW SITS SQUARELY WITH THE

7  GOVERNMENT'S POSITION, SUPREME COURT LAW, 5TH CIRCUIT LAW.

8           IF THIS CASE WAS SIMPLY A SITUATION WHERE THE VICTIM

9  HAD SURVIVED, YOU WOULD HAVE A CONSPIRACY TO COMMIT ASSAULT,

10 AND WE WOULDN'T EVEN BE HAVING A DISCUSSION ON A SEVERANCE.

11 THE ONLY DIFFERENCE IS THAT IT'S A DEATH PENALTY CASE.

12          THIS IS NOT A COMPLICATED CASE.  IT'S THREE

13 INDIVIDUALS, TWO THAT WOULD BE IN TRIAL.  THEIR REPRESENTATIVE

14 ROLES ARE EASILY DEFINED.  IT IS A CASE THAT PROBABLY WOULD NOT

15 TAKE MORE THAN A WEEK IN GUILT TO TRY.  IT'S MUCH LESS

16 COMPLICATED THAN THE TYPICAL CONSPIRACY CASES THAT EVEN MS.

17 SCARDINO HAS MENTIONED, DRUG CONSPIRACIES, WHERE YOU HAVE UP TO

18 TWENTY DEFENDANTS SITTING AT A TABLE WITH THIRTY DEFENSE

19 LAWYERS.  THIS IS AN EASY CASE.  IT'S A SIMPLE CASE FOR THE

20 JURY TO UNDERSTAND.  THE ONLY THING DIFFERENT ABOUT IT IS THAT

21 IT'S A DEATH PENALTY CASE.

22          BUT LEGALLY, IN TERMS OF SEVERANCE LAW, THERE IS NO

23 DIFFERENCE.  THIS CASE WOULD SIMPLY BE A CASE THAT WOULD GO TO

24 THE JURY, AND THE COURT WOULD BE EXPECTED TO INSTRUCT THE JURY

25 TO CONSIDER THE PUNISHMENT IN THE DEATH PENALTY PART OF THE

1  TRIAL, THE SENTENCING PHASE OF THE TRIAL, INDIVIDUALLY TO BOTH

2  DEFENDANTS.  AND AGAIN, THAT'S NOT GOING TO BE COMPLICATED.

3            A JUROR THAT CAN'T UNDERSTAND THAT THEY HAVE TO TAKE

4  THE EVIDENCE PRESENTED AGAINST MR. BACOTE AND THE EVIDENCE

5  PRESENTED AGAINST MR. EBRON AND CONSIDER THEM SEPARATELY

6  DOESN'T HAVE ENOUGH BRAINS TO BE ON A JURY TO BEGIN WITH.

7            SO REALLY, WHAT THIS COMES DOWN TO I BELIEVE MS.

8  SCARDINO'S POSITION IS, IT'S A DEATH PENALTY AND IT HAS TO BE

9  DONE DIFFERENTLY, BUT CONSISTENTLY THE SUPREME COURT HAS HELD

10 IN TERMS OF EVIDENTIARY RULINGS, IN TERMS OF PRETRIAL RULINGS,

11 THAT A DEATH PENALTY CASE IS TO BE TRIED UNDER THE SAME RULES

12 THAT ANY OTHER CASE IS.

13           WHEN YOU GET TO PUNISHMENT, THERE IS DIFFERENT --

14 THERE ARE DIFFERENT RULES IN TERMS OF HOW YOU CAN ADMIT

15 EVIDENCE, BUT ALL OF THOSE ARE FAVORABLE TO THE DEFENDANT.

16 THEY DON'T -- THEY HAVE A PREPONDERANCE ISSUE, BUT IT'S ALL

17 STUFF THAT'S EASILY UNDERSTOOD.

18           SO REALLY THE ONLY --

19           THEY DON'T HAVE A LEGAL FOUNDATION FOR SEVERANCE.

20 IT'S MORE OF AN EMOTIONAL "WELL, JUDGE, IT'S A DEATH PENALTY,

21 IT WOULDN'T BE FAIR TO TRY THEM TOGETHER."  BUT THEY HAVEN'T

22 REALLY POINTED TO ANY FACT OR ANY STATISTIC TO SAY THAT IT

23 WOULD NOT BE FAIR IN A DEATH PENALTY CASE FOR THEM TO BE TRIED

24 AT THE SAME TIME.  THEY HAVEN'T PRESENTED THE COURT ANY LEGAL

25 FOUNDATION FOR SEVERANCE OTHER THAN "JUDGE, IT'S A DEATH

1  PENALTY, YOU CAN'T DO IT THIS WAY," WHICH FLIES IN THE FACE OF

2  PRIOR PRECEDENT IN DEATH PENALTY CASES.

3        NOW, IN TERMS OF -- IN TERMS OF WHY IT SHOULD NOT BE

4  SEVERED, THE FIRST IS THAT THIS CASE IS GOING TO COST THE

5  TAXPAYERS A LOT OF MONEY TO BE TRIED ONCE, NEVER MIND TO BE

6  TRIED TWICE. YOU'RE GOING TO HEAR THE SAME WITNESSES AND THE

7  EXACT SAME EVIDENCE IN THE GUILT PART OF THIS TRIAL TWO TIMES.

8  NOTHING IS GOING TO CHANGE. IT'S GOING TO BE A RELATIVELY

9  SIMPLE CASE, BUT IT'S GOING TO REQUIRE BOTH THE GOVERNMENT AND

10 THE DEFENSE TO BRING IN WITNESSES FROM OUT OF STATE, TO ENGAGE

11 THE MARSHALS IN THE SAME TYPE OF LOGISTICAL NIGHTMARE THAT WE

12 ALWAYS HAVE IN THESE CASES, BECAUSE THEY'RE GOING TO BRING

13 INMATE WITNESSES IN AND WE'RE GOING TO BRING INMATE WITNESSES

14 IN, AND THEY'RE GOING TO COME IN TWICE. A JURY IS GOING TO

15 HAVE TO SIT THROUGH THIS CASE TWICE. THIS COURT IS GOING TO

16 SPEND FOUR MONTHS TRYING THE SAME CASE INSTEAD OF TWO MONTHS

17 TRYING IT ONCE. THE GOVERNMENT IS GOING TO HAVE TO ENGAGE IN

18 HAVING THE SAME RESOURCES, THE SAME PROSECUTORS TRYING THIS

19 CASE TWICE, WHEN IT ONLY NEEDS TO BE TRIED ONE TIME.

20       IN ADDITION TO THAT, THE FACT REMAINS THAT IT IS AN

21 ADVANTAGE TO ONE DEFENDANT TO BE TRIED SECOND. THERE'S NO

22 QUESTION THAT IF YOU CANVASS CRIMINAL DEFENSE LAWYERS, THEY

23 WILL TELL YOU THAT THEY WOULD PREFER A SEVERANCE AND HAVE THEIR

24 CLIENT TRIED LAST, BECAUSE ALL THE EVIDENCE IS ALREADY GOING TO

25 BE FORWARDED ONCE, AND THEY'RE GOING TO HAVE THE OPPORTUNITY TO

```
 1   IMPEACH EACH WITNESS WITH THE PRIOR TESTIMONY THEY GAVE IN THE

 2   FIRST TRIAL.  AND THAT IN MY OPINION IS THE REAL REASON THAT

 3   COUNSEL WANTS THE CASE SEVERED, BECAUSE IT'S A BETTER CASE FOR

 4   A DEFENSE ATTORNEY IF THEY'RE TRYING IT SECOND.  THERE'S

 5   ALREADY BEEN A DRY RUN, THE GOVERNMENT'S WITNESSES ARE

 6   BASICALLY STUCK WITH THEIR TESTIMONY, AND THERE'S AN ADVANTAGE

 7   TO BEING TRIED TWICE.

 8           THERE'S NOTHING LEGALLY THAT SAYS ONE DEFENDANT

 9   SHOULD BE GIVEN THAT ADVANTAGE OVER THE OTHER, AND THERE'S

10   NOTHING LEGALLY THAT SUPPORTS A SEVERANCE IN THIS CASE.

11           THE COURT:  DO YOU HAVE A RESPONSE TO THAT?

12           MS. SCARDINO:  I HAVE, VERY QUICKLY, IF I MAY, YOUR

13   HONOR.

14           MR. BATTE CALLS THIS A SIMPLE CASE.  I DON'T KNOW OF

15   ANY DEATH CAPITAL MURDER CASE IN THE UNITED STATES OF AMERICA

16   THAT ANYBODY WOULD CALL A SIMPLE CASE.  JUST SIMPLY BECAUSE YOU

17   HAVE TWO INDIVIDUALS IN THIS COURTROOM WHO ARE LOOKING AT A

18   POSSIBLE DEATH SENTENCE, WE'RE LOOKING AT THE END OF A LIFE.

19   FOR THAT REASON, YOUR HONOR, ALL THE OTHER ARGUMENT THAT MR.

20   BATTE HAS PUT IN FRONT OF THIS COURT HAS DENIGRATED THE

21   IMPORTANCE OF THE KIND OF TRIAL THAT THIS COURT WILL HEAR.

22           NOW, I UNDERSTAND HIS ARGUMENT -- I KNOW WHEN HE SAYS

23   I HAVE NO LEGAL FOUNDATION FOR SEVERANCE, I SOMEWHAT UNDERSTAND

24   HIS ARGUMENT, EXCEPT THAT IN A CASE LIKE THIS, WHERE YOU HAVE

25   EVEN TWO DEFENDANTS, MR. BACOTE AND MR. EBRON, SITTING NEXT TO
```

1    EACH OTHER AT COUNSEL TABLE, YOU HAVE ONE JURY OVER HERE WHO'S

2    WATCHING THESE PEOPLE CAREFULLY, AND HE'S SAYING THAT THEY --

3    YOU KNOW, IF THEY CANNOT SEPARATE THE ACTIONS OR THE EVIDENCE

4    THAT THEY HEAR AND SEE BETWEEN TWO PEOPLE, THEN THEY SHOULDN'T

5    BE ON THE JURY.  I'M SUGGESTING TO THIS COURT THAT IT'S JUST

6    SIMPLY COMMON SENSE.  YOU HAVE A JURY SITTING OVER HERE.

7    YOU'VE GOT TWO PEOPLE TOGETHER.  WHAT IF IN A HYPOTHETICAL

8    SITUATION ONE PERSON JUMPS UP AND STARTS SCREAMING AND YELLING

9    AND THREATENING THE LAWYER OR THE JUDGE, GOD FORBID, OR ANYBODY

10   ELSE IN THIS COURTROOM?  WHAT IS THE JURY GOING TO THINK ABOUT

11   THE OTHER PERSON SITTING THERE?

12            I THINK IT'S LUDICROUS TO MAKE AN ARGUMENT THAT "THIS

13   IS A SIMPLE CASE, YOU DON'T HAVE ANY LAW BEHIND YOU, DON'T

14   WORRY ABOUT IT, IT'S GOING TO BE FINE, IT MEANS ONE TRIAL

15   INSTEAD OF TWO, AND LET'S SAVE SOME MONEY."  THAT'S NOT MY

16   CRITERIA.  MY CRITERIA IS TO MAKE SURE THAT MY CLIENT GETS A

17   FAIR TRIAL IN FRONT OF A JURY THAT WILL FAIRLY AND

18   UNPREJUDICIALLY LISTEN TO THE EVIDENCE, AND THAT'S ALL I'M

19   ASKING FOR, AND I DO NOT SEE HOW THAT CAN HAPPEN UNLESS THIS

20   COURT SEVERS THESE TWO INDIVIDUALS IN THIS VERY SERIOUS CASE.

21            AND THAT'S ALL I HAVE, YOUR HONOR.

22            THE COURT:  WELL, I MEAN, ARE THERE WITNESSES, SOME

23   WITNESSES THAT WOULD COME IN AGAINST SOME DEFENDANTS AND NOT

24   OTHERS, OR HOW --

25            I NEED TO UNDERSTAND, ARE THERE SOME OTHER THINGS

1    BESIDES JUST THIS?

2         MS. SCARDINO: WELL, THERE MAY BE. THERE'S A LOT OF

3    PEOPLE IN THE --

4         WE HAVE VIDEOS. WE HAVE A COURTYARD SCENE. WE HAVE

5    ALLEGATIONS OF SEVERAL PEOPLE GETTING TOGETHER AND TALKING.

6    THERE'S BOUND TO BE OTHER PEOPLE WHO WITNESSED A LOT OF THINGS

7    THAT THE GOVERNMENT IS USING TO SAY "THIS IS OUR EVIDENCE

8    AGAINST THESE TWO INDIVIDUALS." SO, YES, I'M SURE THAT THERE

9    WILL BE OTHER WITNESSES THAT WILL BE ONLY FOR ONE PERSON AND

10   NOT THE OTHER ONE. I MEAN, THAT'S -- THAT WOULD BE TRUE IN ANY

11   KIND OF TRIAL.

12         BUT EVEN --

13         AND IN ADDITION TO THAT, AND I DON'T MEAN TO SAY

14   OTHER THAN AS IF THAT'S NOT IMPORTANT, BUT I THINK ONE OF THE

15   MOST IMPORTANT THINGS THAT A JURY WILL HEAR IS MITIGATION

16   EVIDENCE. THE PURPOSE OF MITIGATION IS TO SHOW THE JURY WHY

17   THEY SHOULD ANSWER ONE OF THOSE QUESTIONS IN A CERTAIN WAY.

18         YOU'RE GOING TO HAVE --

19         WE'VE GOT TWO PEOPLE WITH TWO SEPARATE BACKGROUNDS,

20   TWO SEPARATE SETS OF WITNESSES FOR EACH INDIVIDUAL, AND I CAN'T

21   TELL THIS COURT WHAT THEY'RE GOING TO BE. I CAN'T TELL THE

22   COURT HOW MANY WITNESSES THERE WILL BE. BUT THEY OBVIOUSLY

23   WILL BE DIFFERENT.

24         THAT'S THE MOST IMPORTANT THING IN ANY CAPITAL MURDER

25   TRIAL, IS THE PUNISHMENT, AND I THINK IN THAT PART OF THE TRIAL

1    IS WHERE IT WOULD BE EXTREMELY IMPORTANT NOT TO HAVE THESE
2    INDIVIDUALS TRIED TOGETHER.

3            AND I DON'T THINK IT'S SO SIMPLE THAT A JURY OF
4    TWELVE PEOPLE CAN SIT AND MAKE THAT DISTINCTION BETWEEN ONE
5    DEFENDANT VERSUS ANOTHER ONE.  I DON'T THINK IT IS THAT EASY.

6            AND FRANKLY, IN MULTIPLE DEFENDANT CASES THAT SOME OF
7    THE LAWYERS IN THIS ROOM AND I WERE ON A COUPLE OF YEARS AGO IN
8    THE SOUTHERN DISTRICT, WE DID HAVE A TABLE FULL OF DEFENDANTS
9    AND A LARGER GROUP OF DEFENSE LAWYERS, AND IT WAS HARD TO KEEP
10   ALL OF THAT SEPARATE AND ASSUME THAT A JURY WAS ABLE TO SIFT
11   THROUGH ALL OF THAT EVIDENCE AND APPLY THE BAD STUFF TO ONE
12   PERSON AND NOT APPLY IT TO ANOTHER.  THAT'S ALMOST IMPOSSIBLE
13   TO DO.

14           I JUST DON'T WANT TO BE IN THE SITUATION OF
15   REPRESENTING SOMEBODY WHO THE GOVERNMENT IS TRYING TO EXECUTE
16   AND HAVING TO WONDER WHETHER THIS JURY IS UNDERSTANDING THE
17   DIFFERENCE BETWEEN THESE TWO INDIVIDUALS AND THE DIFFERENT
18   EVIDENCE THAT THEY HAVE IN FRONT OF THEM, AND WHETHER OR NOT
19   THEY CAN SEPARATE IT.  I THINK THAT'S AN UNNECESSARY SITUATION
20   TO PUT A JURY IN, AND A VERY SMALL THING TO DO FOR AN
21   INDIVIDUAL WHERE THE UNITED STATES GOVERNMENT IS WANTING TO
22   EXECUTE.

23           THE COURT:  IN YOUR MOTION YOU TALKED ABOUT CALLING
24   CO-DEFENDANTS OR SOMETHING.

25           MS. SCARDINO:  WELL, AT THAT -- YEAH.  YES, MA'AM.

1            THE COURT:  AND THAT THEY WOULD BE DENIED THE RIGHT

2    OF CONFRONTATION AND CROSS-EXAMINATION.

3            MS. SCARDINO:  WELL --

4            THE COURT:  DO YOU WANT TO ELABORATE ON THAT?

5            MS. SCARDINO:  YES, MA'AM.

6            IN THE EVENT --

7            I MEAN, WHAT IF -- WHAT IF -- SAY, FOR INSTANCE,

8    HYPOTHETICALLY, WHAT IF MR. BACOTE SAYS "I'M NOT GOING TO

9    TESTIFY"?  CAN I CALL HIM AS A WITNESS?  I MEAN, WE KNOW HE WAS

10   AROUND IN THERE.  AM I GOING TO BE ABLE TO CONFRONT ALL OF THE

11   WITNESSES IN THIS CASE?  IF I DON'T -- I MEAN, IF HE'S A

12   DEFENDANT SITTING AT COUNSEL TABLE, I CAN'T CALL HIM, BUT IF HE

13   IS A WITNESS, AND I'M TRYING EBRON BY HIMSELF, I CAN CALL

14   BACOTE, AND VICE VERSA.

15           THE COURT:  MR. BOURQUE, MR. CUNNINGHAM, DO YOU HAVE

16   ANY --

17           MR. CUNNINGHAM:  JUDGE, ONE OF THE CONCERNS I HAVE,

18   AND IT MAY WELL BE ON GUILT/INNOCENCE A RELATIVELY SIMPLE CASE,

19   BUT WHEN YOU THINK ABOUT MITIGATION IN A CAPITAL CASE, HERE'S A

20   HYPOTHETICAL SITUATION:  WE MAY PUT ON A CASE THAT IS

21   COMPELLING, THAT A NORMAL JUROR MIGHT FEEL THAT MR. BACOTE IS

22   WORTHY OF A LIFE SENTENCE.  OKAY.  WHAT HAPPENS IF THEY PUT ON

23   A MITIGATION CASE THAT'S JUST A LITTLE BIT BETTER?  DO THEY SAY

24   "WELL, WE'RE GOING TO LET ONE GUY DIE AND ONE GUY LIVE"?  I

25   MEAN, THE FACT OF THE MATTER IS, WHEN YOU HAVE THIS MITIGATION

1    EVIDENCE, AND IT'S COMPELLING ON BOTH SIDES, I THINK IF YOU TRY

2    PEOPLE TOGETHER, THERE WOULD BE AN URGE ON THE PART OF THE JURY

3    MAYBE TO DIVIDE THE BABY, MAYBE TO LET ONE LIVE AND LET ONE

4    DIE.

5            SO I THINK WHEN YOU GET INTO THE PUNISHMENT PHASE,

6    AND WHILE IT'S TRUE THE COURT CAN GIVE CAUTIONARY INSTRUCTIONS

7    AND THINGS LIKE THAT, WHEN YOU GET INTO THE PUNISHMENT PHASE IT

8    IS HARD FOR THE JURY TO SEPARATE OUT THAT SORT OF EVIDENCE AND

9    TO GIVE EACH DEFENDANT HIS DUE.  AND THAT IS MY REAL CONCERN

10   ABOUT TRYING THESE CASES TOGETHER, IS WHEN IT GETS TO

11   PUNISHMENT, AND WILL THE JURY REALLY BE ABLE TO GIVE TRUE

12   EFFECT TO THE MITIGATING EVIDENCE WHEN YOU'VE GOT SOMEONE ELSE

13   RIGHT NEXT TO YOU THAT THEY'RE GOING TO COMPARE IT TO.

14   THAT'S -- I DON'T THINK THAT'S FAIR TO DO THAT.

15           MR. BATTE:  JUDGE, I WOULD JUST LIKE TO BRIEFLY

16   RESPOND TO THAT IF I COULD.

17           I THINK THAT THIS CASE CALLS FOR NONSEVERANCE FOR THE

18   VERY REASON THAT THE ENTIRE PROCESS IN A CAPITAL MURDER IS TO

19   DECIDE WHAT THE RIGHT PUNISHMENT IS.

20           NOW, I CAN GUARANTEE YOU THAT IF WE GOT TO THE DEATH

21   PENALTY PART OF THIS TRIAL AND THE CASE WAS SEVERED, BOTH

22   DEFENDANTS WOULD TRY AND CLAIM THAT THE OTHER DEFENDANT WAS

23   MORE CULPABLE, AND THAT THAT WOULD BE A MITIGATING CIRCUMSTANCE

24   WARRANTING A LIFE SENTENCE.

25           NOW, IF YOU SEVER THE CASE, THE JURY IS NOT GOING TO

1   ACTUALLY HAVE A CHANCE TO SEE BOTH DEFENDANTS, TO EXAMINE THE

2   TESTIMONY THAT THE GOVERNMENT BRINGS TOWARDS BOTH DEFENDANTS AT

3   THE SAME TIME AND THEN MAKE THAT COMPARISON IN TRYING TO DECIDE

4   WHETHER OR NOT THERE IS A MITIGATING CIRCUMSTANCE THAT ONE

5   DEFENDANT IS LESS CULPABLE THAN THE OTHER.  IF YOU SEVER IT,

6   THEY'LL ONLY HAVE ONE SIDE OF THE PICTURE.  THEY'LL HAVE ONE

7   DEFENDANT'S SIDE OF THE PICTURE AND NOT THE OTHER.

8         THE GOAL OF CAPITAL SENTENCING IS TO GIVE THE JURY AS

9   MUCH EVIDENCE AS YOU COULD POSSIBLY GIVE THEM SO THAT THEY

10  COULD MAKE THE RIGHT DECISION, WHETHER IT'S THE DEATH PENALTY

11  OR WHETHER IT'S A LIFE SENTENCE, AND THAT'S WHY CASES LIKE THIS

12  SHOULD NOT BE SEVERED IN THE PUNISHMENT PHASE, BECAUSE THE JURY

13  SHOULD HAVE A CHANCE TO REACT TO THAT.

14        AS FAR AS COMPARING WHETHER ONE'S MITIGATING OR NOT,

15  AGAIN, YOU HAVE TO RELY ON THE COURT'S INSTRUCTIONS.  THE JURY

16  IS GOING TO BE TOLD THAT YOU'RE NOT TO COMPARE THE MITIGATING

17  CIRCUMSTANCES OVER ONE DEFENDANT AGAINST THE MITIGATING

18  CIRCUMSTANCES OF THE OTHER, BUT YOU'RE TO WEIGH THEM AGAINST

19  THE AGGRAVATING CIRCUMSTANCES THAT THE GOVERNMENT HAS PRESENTED

20  TOWARDS EACH DEFENDANT, AND I THINK THAT'S AN EASY THING FOR A

21  JURY TO UNDERSTAND.

22        THE ONLY WAY WHAT MR. CUNNINGHAM HAS SUGGESTED THAT

23  THE JURY COULD DO WOULD BE TO SPECIFICALLY VIOLATE THAT

24  INSTRUCTION FROM THE COURT, AND I THINK THAT IT'S BEEN

25  CONSISTENTLY SAID THAT, IN THE SUPREME COURT, THAT WE EXPECT

1  JURIES TO FOLLOW THE COURT'S INSTRUCTIONS. THERE'S ALWAYS A

2  CHANCE THEY COULD DISAVOW THE INSTRUCTIONS, BUT YOU HAVE TO

3  PRESUME THAT THEY WON'T, AND IF YOU PRESUME THAT THEY WON'T,

4  THEN WHAT MR. CUNNINGHAM'S CONCERNED ABOUT IN THEM COMPARING

5  THE MITIGATION OF ONE VERSUS THE OTHER WON'T HAPPEN.

6          SO I THINK WHAT IT COMES RIGHT DOWN TO IS EXACTLY

7  WHAT MS. SCARDINO GOT UP AND SAID FROM THE BEGINNING, TRYING TO

8  IMPLY THAT WHEN I SAY IT'S A SIMPLE CASE MEANS THAT IT'S NOT AN

9  IMPORTANT CASE. THAT'S NOT WHAT I SAID. I DIDN'T SAY IT'S NOT

10  AN IMPORTANT CASE. I SAID THAT LEGALLY IT'S NO DIFFERENT THAN

11  MOST OTHER CASES, AND THE PRECEDENT SAYS IT SHOULD BE TREATED

12  JUST LIKE OTHER CASES.

13          MR. CUNNINGHAM: IF I CAN RESPOND.

14          MR. BATTE BRINGS UP A POINT ABOUT RELATIVE

15  CULPABILITY, AND I THINK UNDER THE FACTS OF THIS CASE -- AND I

16  WANT TO PUT THE COURT ON NOTICE AND I WANT TO PUT MR. EBRON'S

17  LAWYERS ON NOTICE THAT WE INTEND TO POINT OUT AND IN EFFECT PUT

18  MR. EBRON ON TRIAL, AS HE WAS THE ONE THAT DID THIS, THAT MR.

19  BACOTE HAD NOTHING TO DO WITH THAT. SO WE ARE IN EFFECT GOING

20  TO BE PROSECUTING MR. EBRON. BECAUSE THE COURT KNOWS WHEN WE

21  WERE IN CHAMBERS, WE TALKED JUST BRIEFLY ABOUT WHAT WE

22  ANTICIPATED THE FACTS WOULD SHOW ON THIS CASE, AND I THINK THE

23  FACTS WOULD SHOW ON THIS CASE THAT MR. BACOTE IT'S OUR POSITION

24  WAS NOT IN THE CELL WHEN THE STABBING OCCURRED, THAT HE HAD

25  NOTHING TO DO WITH THAT, AND WE'RE GOING TO POINT A FINGER AT

1  MR. EBRON.

2         SECONDLY, WHEN IT COMES DOWN TO RELATIVE CULPABILITY,

3  YOU BET IF THIS CASE IS GOING TO BE TRIED TOGETHER THAT WE'RE

4  GOING TO BE ARGUING THAT MR. EBRON IS MUCH MORE CULPABLE.

5         NOW, IS THAT FAIR FOR MR. EBRON TO HAVE THAT TABLE

6  AND HALF OF THIS TABLE POINTING THE FINGER AT HIM?  I DON'T

7  THINK IT'S FAIR.  AND THAT'S WHERE YOU GET INTO THE PREJUDICIAL

8  JOINDER PROBLEMS, AND MR. BATTE WAS THE ONE THAT BROACHED THAT,

9  BECAUSE THIS TRIAL IF TRIED TOGETHER IS GOING TO BRING UP THE

10 PROBLEM AND THE ISSUE OF US IN EFFECT ATTACKING MR. EBRON.  AND

11 I'VE GOT TO DO THAT FOR MR. BACOTE.  AND QUITE CANDIDLY, IT'S

12 NOT -- IT'S FAIR FOR HIM, BUT IT'S NOT FAIR FOR ME TO GET UP

13 HERE AND BEAT UP ON HIM, BUT I'M SORRY TO SAY THIS, SIR, THAT'S

14 GOING TO HAPPEN.

15         MR. BATTE:  JUDGE, JUST BRIEFLY, BECAUSE THAT HASN'T

16 BEEN BROUGHT UP BEFORE.

17         MR. CUNNINGHAM'S ASSERTION THAT THERE MAY BE

18 ANTAGONISTIC DEFENSES IS THE FIRST LEGALLY RELEVANT ISSUE THAT

19 THE DEFENSE HAS BROUGHT ON THE ISSUE OF SEVERANCE IN MY

20 OPINION.

21         IF WHAT HE SAYS IS TRUE, THEN THERE MAY BE GROUNDS

22 FOR SEVERANCE IF THE COURT DECIDES THAT'S THE CASE, BUT YOU

23 CAN'T JUST PROFFER THAT TO THE COURT.  THEY HAVE TO GO AHEAD

24 AND MAKE A PRIMA FACIE CASE THAT THEY WILL PRESENT AN

25 ANTAGONISTIC DEFENSE.  IN OTHER WORDS, THEY HAVE TO KNOW WHAT

1   MR. EBRON'S DEFENSE IS, AND THEN THEY HAVE TO PRESENT TO THE

2   COURT WHAT MR. BACOTE'S DEFENSE IS, AND THEN THE COURT HAS TO

3   DETERMINE WHETHER OR NOT THEY'RE ANTAGONISTIC.

4        WHAT THEY'RE ASKING THE COURT TO DO IS TO SAY, WELL,

5   IT'S GOING TO BE ANTAGONISTIC, SO GO AHEAD AND MAKE YOUR

6   DECISION NOW, AND UNDER THE CASE LAW FOR ANTAGONISTIC DEFENSES,

7   THEY HAVE TO DO MORE THAN JUST PROFFER THAT.  THEY HAVE TO

8   ACTUALLY PROVE TO THE COURT WITH A PRIMA FACIE CASE THAT

9   THEY'RE GOING TO PRESENT A DEFENSE THAT IS AN OPPOSITE TO EACH

10  OTHER, AND SO FAR THERE'S BEEN NO EVIDENCE BEFORE THE COURT

11  THAT THAT'S GOING TO HAPPEN.  AND THAT'S WHY I THINK SEVERANCE

12  AT THIS POINT ON THAT ISSUE IS PREMATURE.

13       THE COURT:  WELL, I THINK WHAT MR. CUNNINGHAM SAID

14  DOES HAVE SOME RELEVANCE, AND THE PROBLEM IS, IF IT'S NOT

15  SEVERED NOW, THEN YOU GET DOWN THE ROAD AND IT BECOMES ALMOST

16  TOO LATE.  WE GO THROUGH ONE SCHEDULE AND THEN IT JUST -- IT'S

17  NOT GOING TO WORK OUT.  THEN YOU DECIDE, OH, WE'RE GOING TO

18  SEVER THIS LATER, AND IT'S NOT GOING TO WORK OUT TOO WELL.  WE

19  NEED TO PLAN AHEAD AT THIS POINT, NOT JUST DOWN THE ROAD.

20       I'M GOING TO GRANT THE MOTION FOR SEVERANCE.  I THINK

21  THAT THERE IS A REAL LIKELIHOOD OF -- WHICH FROM MY

22  UNDERSTANDING OF THE FACTS, THAT MR. EBRON WENT INTO THE CELL

23  BUT THAT MR. BACOTE DIDN'T.  IS THAT BASICALLY THE SITUATION?

24       MR. BATTE:  YOUR HONOR, THAT IS, BUT THERE'S NO --

25       YOU'RE PRESUMING THAT MR. EBRON IS GOING TO SAY THAT

1  HAPPENED OR THAT THE DEFENSE IS GOING TO PRESENT A DEFENSE

2  SAYING THAT HE DID. AND EVEN IF ONE WENT INTO THE CELL AND THE

3  OTHER DIDN'T, HOW IS THAT ANTAGONISTIC?

4           THE COURT: WELL --

5           MS. SCARDINO: WELL, YOUR HONOR, THE ONLY EVIDENCE WE

6  HAVE SO FAR IS THE EVIDENCE THAT'S BEEN PRESENTED TO US FROM

7  THE U.S. ATTORNEY. AND I THINK IF MR. BATTE WOULD LIKE TO

8  EXPLAIN TO THE COURT WHAT HE SEES ON THE VIDEO, THAT HE HAS

9  LOOKED AT AND WHICH WE HAVE LOOKED AT, WE MAY HAVE VARYING

10 OPINIONS AS TO WHO ACTUALLY IS GOING IN THAT CELL. BUT, I

11 MEAN, HE KNOWS WHAT'S ON THE VIDEO JUST AS WELL AS WE DO.

12          AND THERE WILL BE ANTAGONISTIC DEFENSES IN THIS CASE,

13 WITHOUT A DOUBT, AND IF THERE'S ANY EVIDENCE THAT I COULD USE

14 AT THIS POINT SHORT OF PUTTING MY CLIENT ON THE WITNESS STAND,

15 I WOULD PRESENT THAT.

16          BUT I THINK YOU -- I THINK YOU HAVE --

17          IF YOU HAVE GRANTED MY MOTION TO SEVER, I BELIEVE

18 THAT'S --

19          I THANK YOU VERY MUCH.

20          THE COURT: I'M GOING TO GRANT IT.

21          SO NOW WE NEED TO TALK ABOUT THE SCHEDULE.

22          OKAY. I KNOW THAT WITH JUDGE HEARTFIELD YOU HAD SOME

23 IDEAS ABOUT WHEN YOU WERE GOING TO DO THIS, IS MY

24 UNDERSTANDING. IS THAT --

25          MR. BOURQUE: IF I MAY, JUDGE.

1          THE COURT:  YES.

2          MR. BOURQUE:  IT SOUNDED LIKE THAT WE WERE GOING TO

3     START WHEN WE WERE TALKING ABOUT JUDGE HEARTFIELD'S COURT

4     SOMETIME IN EARLY OCTOBER.  I'M LOOKING AT THE DOCKET CONTROL

5     ORDER HERE.

6          AND I GUESS I NEED TO TELL YOU THIS:  BASED ON THE

7     LATEST TURN OF EVENTS, THE CASE GETTING TRANSFERRED OVER HERE,

8     BEFORE THAT WAS DONE I HAD A NONDEATH CAPITAL, 208, IN HARRIS

9     COUNTY, THAT BECAUSE THE PROSECUTOR IS WITH CHILD RIGHT NOW, WE

10    COULDN'T TRY IT, SO THEY BUMPED IT ALL THE WAY TO SEPTEMBER

11    29TH.  NOW, THAT'S NOT REALLY A HUGE PROBLEM, BECAUSE IT A

12    NONDEATH, AND IT IS REALLY ONLY GOING TO TAKE US THAT WEEK TO

13    GET IT DONE.  TALK ABOUT A SIMPLE CASE, THAT'S A SIMPLE CASE.

14          SO THAT'S THE ONLY PROBLEM THAT I HAVE.

15          THE COURT:  WELL, I THINK THAT YOU GAVE US SOME

16    PROPOSED DATES, AND THEN WE LOOKED AT THAT AND DIDN'T -- AND

17    THOUGHT THAT IT WOULD BE BETTER TO HAVE IT, THE ONE TRIAL START

18    EARLIER TO DEAL WITH THE BENCH/BAR CONFERENCE OF THE EASTERN

19    DISTRICT AND THANKSGIVING, TO BE SURE IT'S FINISHED BY THEN.

20    SO THAT'S THE THOUGHT OF STARTING THIS AT THE END OF SEPTEMBER.

21    SO I JUST THINK THAT --

22          MR. BOURQUE:  THAT'S ALL.  I JUST WANTED TO LAY IT

23    OUT FOR YOU.

24          THE COURT:  AND THE SCHEDULE COULD BE SUBJECT TO

25    CHANGE THERE.

1          MR. BOURQUE:  RIGHT.

2          THE COURT:  THE NONDEATH, SIMPLE CASE, IT SEEMS LIKE

3     IT COULD CHANGE.

4          MR. BOURQUE:  ONE MIGHT THINK SO.

5          THE COURT:  YEAH.  SO I JUST --

6          I KIND OF LIKE THE IDEA OF GETTING IT DONE, GETTING

7     IT DONE EARLY ENOUGH THAT --

8          AND ALSO THERE'S MORE OF A BREAK IN BETWEEN THE FIRST

9     ONE AND THE SECOND ONE.

10         MR. BOURQUE:  WELL, MAYBE IF EBRON WENT FIRST.

11         (LAUGHTER)

12         THE COURT:  NOW, WE'VE HEARD ABOUT THAT.

13         MR. BOURQUE:  WHY AM I ALWAYS FIRST?

14         MS. SCARDINO:  ON BEHALF OF MR. EBRON, I LIKE THE

15    SCHEDULING ORDER, YOUR HONOR, WITH THE CHANGE THAT WE MADE TO

16    JUNE 6TH.  OTHER THAN THAT, I'M VERY HAPPY.

17         THANK YOU, MR. BOURQUE.

18         MR. BOURQUE:  YOU'RE WELCOME.

19         THE COURT:  THAT WOULD PUT THE MAY 30TH DATE TO JUNE

20    6TH, BECAUSE THERE'S SOME CONFERENCE THAT THE LAWYERS WANT TO

21    ATTEND, IS MY UNDERSTANDING.

22         OBVIOUSLY, THIS IS ANTICIPATING A LOT OF WORK PRETTY

23    SOON ON YOUR CASE.

24         MR. BOURQUE:  YOU KNOW, JUDGE, IF I COULD --

25         THAT'S CORRECT.

22

1           IF WE'RE GOING TO MOVE THAT HEARING DATE, THE STATUS

2    CONFERENCE, TO THE 6TH --

3           THE COURT:  YES.

4           MR. BOURQUE:  COULD WE MOVE THE MENTAL HEALTH

5    EVIDENCE ON THE 15TH THAT WE'VE GOT ON PAGE 1, COULD WE MOVE

6    THAT TO THE 30TH?

7           THE COURT:  I WOULD THINK SO.

8           MR. BATTE, HAVE YOU -- OKAY.  HAVE YOU LOOKED AT THIS

9    SCHEDULE?  IT WAS SORT OF A SCHEDULE THAT -- IT WAS KIND OF A

10   SEMIAGREED SCHEDULE I THINK, BUT THEN WE CHANGED IT.

11          MR. BATTE:  WELL, I THINK, YOUR HONOR, IN ALL RESPECT

12   TO MR. BOURQUE, WHEN WE ORIGINALLY PUT THIS TOGETHER FOR JUDGE

13   HEARTFIELD, IT WAS TWO TO THREE MONTHS AGO, AND SO IT DOES GIVE

14   THEM A LITTLE BIT OF A TIME CRUNCH TO FILE THEIR MOTION.  SO I

15   DON'T REALLY OBJECT TO MOVING THE MOTION DATE BACK, IF THAT'S

16   THE MAIN CONCERN.

17          THE COURT:  WELL, WHICH DATE ARE WE TALKING ABOUT?

18          MR. BOURQUE:  I'M TALKING ABOUT THE MENTAL HEALTH

19   EVIDENCE.  I'M OKAY WITH THE PRETRIAL MOTIONS BEING FILED BY

20   THE 2ND OF MAY.

21          OKAY.  MR. CUNNINGHAM SAYS MAYBE IF WE COULD MOVE --

22   GET AN EXTRA WEEK ON THE PRETRIAL MOTIONS, FROM MAY 2ND TO MAY

23   9TH, AND DO THE MENTAL HEALTH EVIDENCE FROM MAY 15TH TO MAY

24   30TH.

25          IS THAT RIGHT?

23

1          MR. CUNNINGHAM: UH-HUH.

2          THE COURT: WILL THAT IMPACT ANY OTHER DATES THOUGH?

3   KEEP LOOKING AT IT.

4          MR. BOURQUE: I DON'T THINK SO.

5          MR. BATTE: IT GIVES ME --

6          YOU'RE ASKING FOR AN ADDITIONAL WEEK?

7          THE COURT: THEY WANT THE PRETRIAL MOTIONS MOVED TO

8   MAY 9TH FROM MAY 2ND, THE MENTAL HEALTH EVIDENCE FROM MAY 15TH

9   TO MAY 30TH, AND THEN WE'RE CHANGING THE MAY 30TH TO JUNE 6TH

10  BECAUSE OF A CONFLICT.

11         MR. BATTE: IT JUST GIVES ME ONE LESS WEEK TO FILE

12  RESPONSES, BUT I DON'T THINK THAT WILL BE A PROBLEM.

13         MR. BOURQUE: WELL, WHAT I WAS GOING TO SAY IS, IF

14  WE'VE GOT JUNE 2ND HERE, IF WE CAN MOVE, FOR YOUR RESPONSES TO

15  OUR PRETRIAL MOTIONS, WE COULD MOVE THOSE TO JUNE 6TH, ON THE

16  SAME DAY AS THE STATUS CONFERENCE. SO THAT GIVES YOU --

17         MR. BATTE: THAT'S FINE.

18         MR. BOURQUE: IS THAT OKAY?

19         MR. BATTE: YEAH.

20         THE COURT: OKAY. RESPONSES TO PRETRIAL MOTIONS

21  WE'LL MOVE TO JUNE 6TH.

22         MR. BOURQUE: AND THE EXPERT WITNESSES DEADLINE.

23         THE COURT: THAT'S ALSO MOVED TO JUNE 6TH?

24         MR. BOURQUE: YES, MA'AM, IF THAT'S ACCEPTABLE.

25         THE COURT: OKAY. EVERYBODY LIKE THAT?

1         SO PRETRIAL MOTIONS MAY 9TH, MENTAL HEALTH MAY 30TH,

2    STATUS HEARING JUNE 6TH, EXPERT WITNESSES JUNE 6TH, AND

3    RESPONSES TO PRETRIAL MOTIONS JUNE 6TH.

4              OKAY.  IS THAT ACCEPTABLE?

5              MR. BATTE:  YES, YOUR HONOR.

6              MR. BOURQUE:  YES, YOUR HONOR.

7              THE COURT:  OKAY.  LET'S DO THAT.

8              AND THEN THE EBRON MOTION -- THE EBRON SCHEDULE,

9    BESIDES THE JUNE 6TH HEARING, IS THERE ANYTHING THAT WE NEED TO

10   CHANGE ON THAT?

11             MS. SCARDINO:  NO, MA'AM.  I THINK OURS IS SET FAR

12   ENOUGH IN ADVANCE THAT -- WE'VE LOOKED AT THEM, AND SO FAR

13   THEY'RE OKAY.  I DON'T HAVE ANY OBJECTION TO ANY OF THEM.

14             BUT I DO APPRECIATE YOU MOVING THE MAY 30TH TO JUNE

15   6TH.

16             MR. BATTE:  JUDGE, I DO HAVE A CONCERN, BECAUSE, WITH

17   THE NEW TRIAL DATE, IT PUTS OUR RESPONSES TO THE EBRON MOTIONS

18   RIGHT IN THE MIDDLE OF JURY SELECTION, AND UNFORTUNATELY, I'M

19   PROBABLY GOING TO HAVE TO TRY BOTH OF THEM.

20             THE COURT:  WELL, IT'S A SIMPLE CASE, MR. BATTE.

21             MR. CUNNINGHAM:  AND HE'LL HAVE THE BENEFIT OF THE

22   FIRST TRIAL, TOO, YOUR HONOR.

23             MR. BATTE:  WELL, HAVING DONE ENOUGH OF THESE, I'M

24   PRETTY SURE THAT THE DEFENSE MOTIONS WILL TRY AND UNSIMPLIFY IT

25   AS MUCH AS THEY CAN.

25

1              THE COURT:  OKAY.  WHICH ONE ARE YOU TALKING ABOUT?

2              MR. BATTE:  I JUST DON'T WANT TO BE HAVING TO DEAL

3    WITH RESPONSES.

4              THE COURT:  RESPONSE TO PRETRIAL MOTIONS ON THE

5    SECOND CASE?

6              MR. BATTE:  YES, YOUR HONOR.

7              THE COURT:  WELL, IS THERE ANOTHER DATE YOU WANT TO

8    SUGGEST?

9              MR. BATTE:  I WOULD LIKE IT TO BE THE SAME TIME

10   LIMITS AS MR. BACOTE.

11             THE COURT:  WHAT?  THAT WILL BE OVER.

12             MR. BATTE:  THE SAME --

13             THAT WAY I CAN DEAL --

14             THE SAME SCHEDULING ORDER AS FAR AS MOTIONS AS MR.

15   BACOTE.  THAT WAY I CAN DEAL WITH ALL THE MOTIONS AT ONE TIME.

16             MS. SCARDINO:  SO YOU WANT IT EARLIER?

17             MR. BATTE:  YES, YOUR HONOR.

18             MS. SCARDINO:  MR. EBRON DOES NOT WANT IT EARLIER.

19             MR. BATTE:  I DON'T KNOW WHY THERE WOULD BE A REASON

20   THAT THEIR MOTION SHOULD BE FURTHER BACK.  DISCOVERY WAS

21   TENDERED TO BOTH DEFENDANTS AT THE SAME TIME.  THEY ALL GOT THE

22   SAME EVIDENCE AT THE SAME TIME.  THERE'S NO PRACTICAL REASON

23   THAT THEY SHOULD BE GIVEN MORE TIME TO RESPOND OTHER THAN THAT

24   THEIR CASE ISN'T GOING TO TRIAL UNTIL A FEW MONTHS LATER.

25             MS. SCARDINO:  WELL, YOU KNOW, I GUESS IT'S ALL

1    RIGHT, YOUR HONOR.  WE CAN -- I DON'T -- I WASN'T CHECKING MY

2    DOCKET TO MAKE SURE THAT I DIDN'T HAVE ANYTHING ON THE DAY THAT

3    THEY WERE SUPPOSED TO COME BACK FOR PRETRIAL MOTIONS.

4                 WELL, NOW WE'VE GOT JUNE 6TH, SO --

5                 IS THAT ALL RIGHT, JIMMY?

6                 THE COURT:  MAY 9TH -- WE'VE GOT PRETRIAL MOTIONS DUE

7    MAY 9TH ON THE FIRST CASE, SO YOU'RE TRYING TO SAY YOU WANT

8    THEM DUE MAY 9TH IN THE SECOND CASE, TOO?

9                 MR. BATTE:  WELL, I THINK YOU MOVED THEM BACK.  WAS

10   IT TO MAY 9TH?

11                THE COURT:  RIGHT.

12                MR. BATTE:  YES, YOUR HONOR.

13                MS. SCARDINO:  IF I MAY INTERJECT ONE THING HERE, AND

14   JIMMY, MR. PHILLIPS JUST REMINDED ME, THAT WE DO HAVE A DEATH

15   CAPITAL THAT STARTS TRIAL IN BURLESON COUNTY ON JULY 7TH.  IF

16   WE ARE -- I MEAN, IT'S A CRUNCH TO GET IT READY.  IT'S A

17   REVERSAL FROM THE 5TH CIRCUIT.  IT'S A RETRIAL OF A DEATH CASE.

18   THIS JUDGE WILL NOT -- IT WON'T CHANGE.  BUT I'M JUST SAYING

19   THAT IF I HAVE TO BE WORKING ON MOTIONS AND THEN COMING BACK

20   OVER HERE FOR A MOTIONS HEARING ON THIS CASE IN JUNE, I WOULD

21   REALLY PREFER NOT TO DO THAT.  BUT, OF COURSE, IF THE COURT

22   SAYS I HAVE TO, I WILL.  I'M JUST SAYING --

23                THE COURT:  WELL, IS THERE SOMETHING THAT CAN

24   ACCOMMODATE EVERYBODY'S CONCERNS HERE?

25                MR. BATTE:  I'M SURE THERE IS.

27

1           (LAUGHTER)

2           MS. SCARDINO: WE HAVEN'T GOT IT YET THOUGH.

3           THE COURT: WHAT IS IT?

4           MR. BATTE: WELL, YOUR HONOR, IF WE COULD HAVE --

5           PRACTICALLY SPEAKING, JUDGE, FROM ABOUT THE FIRST

6 WEEK OF AUGUST, FROM THAT AUGUST 8TH SETTING, THAT LAST STATUS

7 CONFERENCE ON AUGUST 8TH, UNTIL THE GENERAL VOIR DIRE, I'M

8 GOING TO BE FOCUSED ON TRYING MR. BACOTE.

9           THE COURT: RIGHT.

10          MR. BATTE: I'M GOING TO HAVE WITNESSES COMING IN.

11 WE'RE GOING TO BE DEALING WITH JURY INSTRUCTIONS AND OTHER

12 ISSUES THROUGHOUT THAT TIME PERIOD, AND THE OTHER DEADLINES.

13 SO IF MY DEADLINE FOR RESPONDING TO MS. SCARDINO'S MOTIONS IS

14 BEFORE THEN, THEN I DON'T THINK IT WILL BE THAT BIG OF A

15 PROBLEM FOR ME. SO IF I CAN HAVE A DEADLINE THAT SAYS, OKAY,

16 I'M GOING TO BE THROUGH DEALING WITH THOSE BY AUGUST 1ST, THEN

17 I DON'T HAVE TO WORRY ABOUT JUGGLING, RESPONDING TO, YOU KNOW,

18 HOWEVER MANY MOTIONS SHE MIGHT FILE AND TRYING TO GET THE EBRON

19 CASE READY AT THE SAME TIME.

20          THE COURT: OKAY. SO WHAT SPECIFIC DATES DO YOU WANT

21 TO SUGGEST?

22          MS. SCARDINO: WITH THE IDEA THAT I START A CAPITAL

23 TRIAL IN BURLESON COUNTY ON JULY 7TH.

24          THE COURT: WHY DON'T WE JUST MAKE IT LATER? IF WE

25 DON'T DO THE OTHER TRIAL UNTIL MARCH, I DON'T KNOW IF WE HAVE

1    TO HAVE OCTOBER. MAYBE WE COULD DO IT AFTER OCTOBER.

2            MR. BATTE: YEAH, MAYBE --

3            MS. SCARDINO: JUDGE, WE HAVE A STATUS CONFERENCE ON

4    JANUARY 30TH. I MEAN, I'M CERTAINLY WILLING TO USE THAT DATE

5    AS HE DID IN MR. BACOTE'S SCHEDULING ORDER, USING THAT DATE,

6    WHICH IS A STATUS CONFERENCE, FOR HIS RESPONSE TO MY PRETRIAL

7    MOTIONS, AND THEN GIVE ME A DATE SOMETIME IN OCTOBER OR

8    NOVEMBER WHEN I HAVE TO SUBMIT THEM. SO INSTEAD OF OCTOBER --

9    LET'S SEE. LET ME MAKE SURE I'M LOOKING AT --

10           THE COURT: OKAY. WHY DON'T YOU GUYS COME UP WITH

11   WHAT YOU WANT TO SUGGEST THEN? GET TOGETHER AND FIGURE OUT --

12           THIS WOULD BE PRETRIAL MOTIONS.

13           NOW, THE DISCOVERY DEADLINE IS GOING TO STAY THE

14   SAME.

15           (OFF-THE-RECORD DISCUSSION BETWEEN COUNSEL)

16           MR. BATTE: OKAY. THAT'S FINE.

17           MS. SCARDINO: ALL RIGHT. WHAT WE'VE SUGGESTED IS,

18   ON MR. EBRON'S SCHEDULING ORDER, YOU'VE GOT OCTOBER 6, 2008, AS

19   RESPONSE TO PRETRIAL MOTIONS.

20           THE COURT: RIGHT.

21           MS. SCARDINO: SO JUST TAKE OUT, DELETE SEPTEMBER 2ND

22   AND MAKE THE PRETRIAL MOTIONS DUE ON OCTOBER 6TH.

23           THE COURT: OKAY.

24           MS. SCARDINO: AND ON JANUARY 30TH, WHEN WE HAVE TO

25   BE HERE FOR A STATUS CONFERENCE, PERHAPS THE COURT WOULD ALLOW

                                                                29

1    MR. BATTE TO DO HIS RESPONSES TO THE PRETRIAL MOTION ON JANUARY

2    30TH.

3              THE COURT:  WELL, I MEAN, I WOULD RATHER HAVE IT IN

4    BEFORE WE HAVE TO HAVE THE STATUS CONFERENCE.

5              MS. SCARDINO:  OKAY.  WELL, THEN, IF YOU COULD THEN

6    DO THE PRETRIAL MOTIONS DUE ON SEPTEMBER 2ND, AND THE RESPONSES

7    THEN WOULD BE OCTOBER 6TH.

8              WOULD THAT BE OKAY, MR. BATTE?

9              THE COURT:  NO, THAT'S WHAT WE ALREADY HAVE, AND HE

10   DIDN'T LIKE THAT.

11             MS. SCARDINO:  OH, THAT'S RIGHT.

12             MR. BATTE:  MAYBE WE COULD MOVE THEM UP TO A WEEK

13   BEFORE THE 30TH, THE 23RD OR SO OF JANUARY.

14             MS. SCARDINO:  THAT WOULD BE OKAY.  YEAH, THAT WOULD

15   BE FINE.  AND THEN THEY JUST USE THE OCTOBER 6TH DATE AS

16   PRETRIAL MOTIONS ARE DUE, AND THEN A COUPLE OF WEEKS LATER --

17             THE COURT:  WELL, CAN'T HE JUST DO IT THOUGH --

18             I MEAN, THAT DOESN'T REALLY GIVE ME ENOUGH TIME.

19   SOMETIME IN DECEMBER OR SOMETHING?

20             MS. SCARDINO:  SURE.  I WAS JUST LOOKING FOR ANOTHER

21   DATE THAT YOU ALREADY HAD HERE, IS THE ONLY THING I WAS LOOKING

22   AT.

23             THE COURT:  BUT I DON'T ACTUALLY WANT A DATE I

24   ALREADY HAVE.

25             MS. SCARDINO:  OKAY.

1           THE COURT:  I WANT A DATE I MAYBE DON'T HAVE.

2           MS. SCARDINO:  AND YOU LIKE TO DO THESE ON FRIDAYS,

3    IS THAT RIGHT?

4           THE COURT:  UH-HUH.  WELL, I DON'T CARE ABOUT THE

5    DEADLINES TO FILE STUFF.  WHAT I WANT TO DO ON FRIDAYS IS

6    STATUS CONFERENCES, BECAUSE THAT WAY I CAN DO OTHER THINGS

7    DURING THE WEEK, LIKE TRIALS.  BUT AS FAR AS THE DEADLINE TO

8    FILE SOMETHING, IT DOESN'T MATTER TO ME WHAT DAY OF THE WEEK IT

9    IS.

10           I MEAN, WE'VE GOT A MOTIONS IN LIMINE DEADLINE

11    JANUARY 26TH, BUT THIS IS HAVING TO DO WITH RESPONSES TO

12    PRETRIAL MOTIONS, WHICH IS GOING TO BE A LOT MORE THAN JUST

13    MOTIONS IN LIMINE.  I WOULD LIKE IT EARLIER THAN THAT.

14           MS. SCARDINO:  MAYBE THE 1ST OF JANUARY, OR THE 2ND,

15    3RD?

16           THE COURT:  WELL, LET ME LOOK AT MY CALENDAR.

17           WELL, LIKE JANUARY -- SOMETIME BETWEEN JANUARY 5TH

18    AND 9TH.

19           MS. SCARDINO:  I DON'T HAVE ANYTHING ON MY CALENDAR

20    THAT WOULD CONFLICT WITH ANY OF THOSE DATES, YOUR HONOR.

21           THE COURT:  RESPONSES BY JANUARY 9TH.

22           MR. BATTE:  OKAY.

23           THE COURT:  OKAY.  THAT CHANGES THAT.

24           NOW, WE STILL HAVE THE JUROR QUALIFICATION REVIEW

25    DEADLINE OCTOBER 3RD.  THAT PUTS YOU IN THE MIDDLE OF THAT

1    OTHER TRIAL.  DO YOU NOT LIKE THAT OR --

2               MR. BATTE:  I DON'T THINK THAT'S A PROBLEM, JUDGE.

3               THE COURT:  OKAY.

4               MR. BATTE:  THAT'S JUST SITTING DOWN AND LOOKING AT

5    THOSE CARDS.

6               THE COURT:  OKAY.  EXPERT WITNESSES, OCTOBER 6TH.  IS

7    THAT STILL OKAY?

8               MS. SCARDINO:  THAT'S FINE.

9               THE COURT:  TO DISCLOSE IDENTITY OF EXPERTS.

10              MR. BATTE:  THAT WON'T BE AN ISSUE.

11              THE COURT:  ALL RIGHT.  SO WE'RE JUST CHANGING THE

12   SEPTEMBER 2ND TO OCTOBER 6TH, AND THE OCTOBER 6TH TO JANUARY

13   9TH.

14              NOW, I DID HAVE A QUESTION ABOUT, SOMETHING ABOUT

15   TALKING TO THE JURY ADMINISTRATOR OR SOMETHING.  WHERE'S THAT?

16              MS. SCARDINO:  I THINK THAT'S --

17              THAT WOULD BE JUNE 6TH, YOUR HONOR.  AT LEAST IT IS

18   ON MR. EBRON'S.

19              THE COURT:  OH, OKAY.  ARE YOU REALLY GOING TO DO

20   THAT?  WE DIDN'T DO THAT BEFORE I DON'T THINK.  THE JURY

21   ADMINISTRATOR REGARDING THE CREATION OF THE MASTER JURY -- I

22   MEAN, IT'S THE WAY IT'S ALWAYS KIND OF DONE, LIKE NOTHING IS

23   DIFFERENT.

24              MR. BATTE:  I THINK JUDGE HEARTFIELD STARTED DOING

25   THAT, JUDGE, BECAUSE THERE WAS A MOTION MADE IN ONE CASE BY

1  DEFENSE COUNSEL ALLEGING THAT THE JURY POOL WAS

2  UNCONSTITUTIONAL THE WAY IT WAS DONE. SO FROM THAT POINT ON HE

3  JUST MADE IT A REGULAR ISSUE THAT HE WOULD HAVE THE JURY

4  ADMINISTRATOR COME IN SO THAT IT WOULD BE ON ON THE RECORD.

5  BUT I THINK THAT IF THEY DON'T MAKE A MOTION TO CHALLENGE HOW

6  THE JURY POOL WAS MADE, THEN I DON'T THINK IT'S NECESSARY.

7          THE COURT: I MEAN, I GUESS WE CAN LEAVE THAT ON

8  THERE RIGHT NOW. I JUST -- IT'S USUALLY NOT SOMETHING THAT WE

9  WOULD DO. IT'S THE SAME OLD THING.

10          MS. SCARDINO: I DIDN'T KNOW WHAT THIS MEANT, SO --

11          THE COURT: OKAY. WELL, I'LL DIDN'T REALLY EITHER,

12  AND I LOOKED AT IT AND I THOUGHT, WELL, YOU KNOW, WE DIDN'T DO

13  THAT BEFORE, BUT MAYBE THAT'S A GREAT IDEA.

14          WHY DON'T WE JUST LEAVE THAT IN THERE, AND IN CASE

15  THERE IS A QUESTION, WE CAN HAVE THIS PERSON SHOW UP. BUT --

16          MS. SCARDINO: I CAN TELL THE COURT I DON'T

17  ANTICIPATE YOU HAVING TO CALL THE JURY ADMINISTRATOR.

18          THE COURT: OKAY. GOOD.

19          MS. SCARDINO: THANK YOU, YOUR HONOR.

20          THE COURT: OKAY. WE'LL LEAVE IT IN THERE JUST IN

21  CASE.

22          MS. SCARDINO: OKAY. AND JUST FOR MY SLOW BRAIN THIS

23  MORNING, IF YOU CAN --

24          LET'S GO BACK OVER IF YOU WOULD AND TELL ME THE

25  DATES. WE'VE GOT SEPTEMBER 2, 2008, IS DELETED TOTALLY, IS

1    THAT RIGHT?

2              THE COURT:  WELL, IT'S CHANGED TO OCTOBER 6TH.

3              MS. SCARDINO:  YES.  AND ON OCTOBER 6TH IS THE DAY ON

4    WHICH I HAVE TO SUBMIT PRETRIAL MOTIONS?

5              THE COURT:  ALSO THE SAME DAY AS EXPERT WITNESSES.

6              MS. SCARDINO:  YES, MA'AM.

7              THE COURT:  OKAY.

8              MS. SCARDINO:  AND THAT WOULD BE FINE.

9              THE COURT:  OKAY.

10             MS. SCARDINO:  AND THEN WE'VE GOT MR. BATTE'S

11   RESPONSES WOULD BE DUE JANUARY 9TH?

12             THE COURT:  RIGHT.

13             MS. SCARDINO:  OKAY.  AND THEN EVERYTHING ELSE --

14             THE COURT:  EVERYTHING ELSE WOULD STAY THE SAME.

15             MS. SCARDINO:  OKAY.  THANK YOU, MA'AM.  I APPRECIATE

16   THE CLARIFICATION.

17             THE COURT:  OKAY.  BACK ON MR. BACOTE, I THINK I

18   DON'T WANT THE RESPONSES DUE THE SAME DATE AS THE STATUS

19   CONFERENCE, BECAUSE I WANT TO HAVE THE RESPONSE BEFORE THE

20   STATUS CONFERENCE.  THIS IS BACK ON THE OTHER ONE.  SO THAT'S A

21   PROBLEM.

22             MAYBE WHAT WE SHOULD DO IS DO THAT ON JUNE 6TH.  THE

23   PROBLEM IS IF I DO IT ON JUNE 13TH, I GET KIND OF -- IT'S A

24   PROBLEM WITH SHERMAN CASES.  BUT --

25             MR. BATTE:  JUNE 13TH?

```
 1          THE COURT:  SEE, THE ONE, THE HEARING, THE STATUS

 2  CONFERENCE, WE COULD CHANGE THAT AND THEN YOU COULD LEAVE THOSE

 3  OTHER DEADLINES ALONE, IF WE CHANGE THAT TO JUNE 13TH FROM JUNE

 4  6TH.  I'LL JUST HAVE TO BE BACK FROM SHERMAN.  BUT I KNOW I'M

 5  SCHEDULED FOR THAT WHOLE WEEK THERE.

 6          MS. SCARDINO:  THAT WOULD BE FOR MR. --

 7          THE COURT:  BECAUSE THE PROBLEM IS, IF I CUT THE JUNE

 8  6TH, I WANT THOSE RESPONSES EARLIER, BUT THAT WAS MR. BATTE'S

 9  PROBLEM, GETTING THE RESPONSES EARLIER I THINK, BECAUSE THAT

10  WAS A PROBLEM.  RIGHT?

11          MR. BATTE:  I DON'T THINK IT'S A PROBLEM HAVING THEM

12  DUE BY JUNE 2ND, JUDGE.

13          THE COURT:  IT WASN'T A PROBLEM?

14          MR. BATTE:  WELL, IT'S JUST WHEN THEY MOVED BACK --

15  WHEN WE MOVED BACK THEIR DEADLINE, IT MOVED BACK MY DEADLINE,

16  BUT I THINK I CAN PROBABLY DO IT IN THREE WEEKS.

17          THE COURT:  IF YOU CAN DO IT BY JUNE 2ND, THEN WE CAN

18  KEEP THE JUNE 6TH, IF THAT'S OKAY.

19          MR. BATTE:  SO MY DEADLINE WILL REMAIN JUNE 2ND?

20          THE COURT:  RIGHT, UNLESS THAT'S A BIG PROBLEM.

21          MR. BATTE:  IT WON'T BE --

22          THE COURT:  OKAY.

23          MR. BATTE:  -- I DON'T ANTICIPATE.

24          THE COURT:  WHAT ABOUT THE EXPERT WITNESS IDENTITY

25  THING?  DO YOU WANT TO KEEP THAT ON JUNE 6TH OR 2ND?
```

1        MR. BATTE:  IT DOESN'T MATTER TO ME, JUDGE.

2        MR. BOURQUE:  I THINK, JUDGE, LET'S LEAVE THAT JUNE

3    6TH.  YOU CAN ALWAYS USE A LITTLE EXTRA SPACE ON YOUR EXPERT

4    WITNESSES.

5        THE COURT:  YEAH.  I DON'T THINK I NECESSARILY HAVE

6    TO DO ANYTHING ABOUT THOSE.

7        MR. BOURQUE:  RIGHT.

8        THE COURT:  SO I THINK THAT WILL BE OKAY.  WE'LL

9    LEAVE THAT JUNE 6TH, THE EXPERT WITNESS, BUT WE'LL DO THE

10   RESPONSES JUNE 2ND.

11       OKAY.  NOW, I DO KNOW JUDGE HEARTFIELD LAST TIME

12   SEPARATED THE TRIAL INTO THREE STAGES.  WHAT ARE YOUR THOUGHTS

13   ON THAT?  I DIDN'T DO THAT LAST TIME.  MAYBE IT'S A GOOD IDEA.

14       MS. SCARDINO:  I'M SORRY, YOUR HONOR.  WOULD YOU SAY

15   THAT AGAIN?

16       THE COURT:  HE SEPARATED THE TRIAL INTO THREE STAGES,

17   AT LEAST THAT'S WHAT HE TOLD ME.

18       DID HE DO THAT?

19       MR. BATTE:  YES, YOUR HONOR.

20       THE COURT:  OKAY.  SO THERE WOULD BE LIKE THE

21   GUILT/INNOCENCE PHASE AND THEN AN ELIGIBILITY PHASE AND THE

22   SELECTION PHASE.

23       HE WAS CONVINCED THAT WAS A GOOD IDEA.  I'M NOT

24   REALLY SURE WHY, BUT I KIND OF HAVE AN IDEA.

25       WHAT DO YOU THINK ABOUT THAT?

1    MR. BATTE:  I THINK THAT'S THE TREND IN THESE CASES

2    BASED ON CRAWFORD AND THE FIELDS CASE IN THE 5TH CIRCUIT, THAT

3    THAT'S THE SAFER WAY TO GO ABOUT TRYING THESE CASES.

4    I CAN TELL YOU IT'S MORE CONFUSING FOR THE JURY,

5    BUT -- AT LEAST IN MY EXPERIENCE FROM THIS LAST CASE.  BUT I

6    THINK THAT IT'S A MUCH SAFER WAY.  YOU DON'T HAVE TO INSTRUCT

7    THE JURY THAT SOME EVIDENCE THEY'RE TO CONSIDER ONE WAY AND

8    SOME TO CONSIDER THE OTHER.

9    AND YOU DON'T HAVE TO FERRET OUT WHETHER THERE'S A

10   CONFRONTATION RIGHT TO CHALLENGE EVIDENCE, BECAUSE IT'S

11   SIMPLY -- IF IT'S EVIDENCE PRESENTED IN THE ELIGIBILITY PHASE,

12   THERE'S A CONFRONTATION CLAUSE RIGHT, AND IF IT'S PRESENTED IN

13   THE SELECTION PHASE, THERE ISN'T.  SO --

14   THE COURT:  OKAY.  SO IT SOUNDS TO ME LIKE THAT'S AN

15   ADVISABLE WAY TO GO FORWARD THEN.  SO I PLAN TO DO THAT.

16   SO I TAKE IT, MR. BATTE, YOU'VE CHANGED YOUR LITTLE

17   POWERPOINT PRESENTATION ON THINGS?

18   MR. BATTE:  YES, YOUR HONOR, I HAVE.

19   THE COURT:  OKAY.  GOOD.  BECAUSE I'VE GOT TO

20   CHANGE WHAT -- I MEAN, THE WHOLE VOIR DIRE WE DID AS A

21   TWO-PHASE THING, SO I NEED TO CHANGE THAT UP.

22   MR. BATTE:  RIGHT.

23   THE COURT:  IF YOU HAVE A THREE -- IF YOU HAVE A

24   POWERPOINT THAT HAS TO DO WITH THE THREE PHASES, THAT MIGHT BE

25   HELPFUL.

1          MR. BATTE:  I'LL SEND IT TO YOU AND TO DEFENSE

2     COUNSEL, JUDGE.

3          THE COURT:  OKAY.  ALL RIGHT.  ANYTHING ELSE YOU WANT

4     TO TALK ABOUT TODAY?

5          MR. BATTE:  YOUR HONOR, I'VE HAD PREVIOUS DISCUSSIONS

6     WITH MR. CUNNINGHAM.  THE GOVERNMENT IS SEEKING TO GET WHAT THE

7     FBI TERMS AS MAJOR CASE FINGERPRINTS, WHICH ARE BASICALLY PALM

8     PRINTS AND INDEX PRINTS OF MR. BACOTE.  WE'VE ALREADY GOTTEN

9     THEM FROM MR. EBRON.  AND GENERALLY MR. CUNNINGHAM HAS SAID

10    THAT HE DIDN'T HAVE AN OBJECTION TO THAT, THAT THERE IS NO --

11         MR. BACOTE DOES NOT HAVE A RIGHT TO NOT GIVE THOSE

12    PRINTS OVER.  IT'S NOT SOMETHING THAT'S INCRIMINATORY OR A

13    FIFTH AMENDMENT ISSUE, AND I THINK COUNSEL ALL RECOGNIZES THAT.

14    BUT WE NEVER HAVE BEEN ABLE TO GET IT DONE.  WE WERE PREPARED

15    TO DO IT TODAY.  WE WERE UNDER THE IMPRESSION THAT MR. BACOTE

16    WOULD DO THAT VOLUNTARILY.

17         WHEN MR. CUNNINGHAM APPROACHED HIM ABOUT THAT THIS

18    MORNING, I HEARD HIM SAY THAT HE WOULD NOT DO THAT.  HE WANTED

19    A COURT ORDER.

20         SO BECAUSE THE AGENT IS HERE AND PREPARED TO DO IT,

21    AND BECAUSE WE NEED TO GET THESE PRINTS TO THE LAB AND HAVE

22    THEM ANALYZED, I'M GOING TO AT THIS POINT ASK THE COURT TO

23    ENTERTAIN AN ORAL MOTION TO COMPEL HIM TO GO AHEAD AND GIVE

24    THOSE PRINTS.

25         IF THE COURT DOESN'T WISH TO DO THAT, THEN I CAN FILE

1  A WRITTEN MOTION, BUT THE PROBLEM WITH THE WRITTEN MOTION IS,

2  IS THAT THEY'RE THEN GOING TO HAVE TO GO INTO THE PENITENTIARY,

3  THEY'RE GOING TO TAKE HIM OUT, AND FROM WHAT I KNOW OF MR.

4  BACOTE, IF HE REFUSES TO DO THAT, THEN THEY WILL GO IN WITH A

5  CELL EXTRACTION TEAM AND THEY WILL FORCIBLY REMOVE HIM FROM THE

6  CELL AND THEY WILL FORCIBLY TAKE THE PRINTS FROM HIM.

7           I DON'T WANT IT TO COME TO THAT, BUT I WOULD SUGGEST

8  TO THE COURT THAT IT'S MY OPINION THAT THAT'S EXACTLY WHAT'S

9  GOING TO HAPPEN IF WE DON'T GET THESE PRINTS TAKEN FROM HIM

10 TODAY.

11          SO I WOULD ASK THE COURT TO GO AHEAD AND GRANT THAT

12 MOTION, INSTRUCT MR. BACOTE THAT THIS IS NOT AN OPTIONAL THING

13 FOR HIM, AND THAT THE PRINTS WILL BE TAKEN FROM HIM ONE WAY OR

14 THE OTHER.

15          THE COURT:  OKAY.  MR. CUNNINGHAM?

16          MR. CUNNINGHAM:  YEAH, MR. BATTE IS RIGHT, IT'S NOT

17 TESTIMONIAL.  I DON'T HAVE ANY LEGAL RESPONSE TO SAY WHY HE --

18 WHY YOU CAN'T ORDER IT.  SO --

19          THE COURT:  NO.  I WILL ENTERTAIN THE ORAL MOTION.

20 I'LL GRANT THAT MOTION AND ORDER THAT THOSE PRINTS BE TAKEN

21 TODAY.

22          MR. BOURQUE:  FORTHWITH BEFORE WE LEAVE TODAY?

23          THE COURT:  WILL IT BE DONE HERE?

24          MR. BATTE:  YES, YOUR HONOR.

25          THE COURT:  YES.  I THINK IT WOULD BE MUCH BETTER TO

39

1  HAVE IT DONE HERE THAN AT THE PENITENTIARY.

2            MR. BATTE:  SPECIAL AGENT VILLAREAL IS HERE.  SHE'S

3  MADE ARRANGEMENTS WITH THE MARSHAL SERVICE.  THEY'RE PREPARED

4  TO DO IT IN AN EXPEDITIOUS FASHION SO THAT HE AND MR. EBRON CAN

5  GET BACK TO THE USP THIS MORNING.

6            THE COURT:  IN TIME FOR LUNCH OR SOMETHING.

7            MR. BATTE:  YES, YOUR HONOR.

8            THE COURT:  OKAY.  THAT'S SO ORDERED.

9            ANYTHING ELSE TODAY?

10           MS. SCARDINO:  NOTHING FROM MR. EBRON.

11           THE COURT:  OKAY.  I'M GOING TO ISSUE THESE ORDERS,

12  THE NEW SCHEDULING ORDERS.

13           I'LL ISSUE AN ORDER GRANTING THE MOTION TO SEVER AND

14  DENYING THE MOTION TO CHANGE COUNSEL.

15           AND THEN I TALKED TO COUNSEL EARLIER ABOUT BUDGET

16  MATTERS THAT I THINK THEY'RE GOING TO TAKE CARE OF.

17           IS THERE ANYTHING FURTHER THEN?

18           MR. CUNNINGHAM:  NO, YOUR HONOR.

19           THE COURT:  THANK YOU.  AND YOU'RE EXCUSED.

20           THE CSO:  ALL RISE.

21                           CERTIFICATE

22           I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

23  FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

24

25  /S/_____
    WENDELL R. PARKS, CP/CM